THE CITY OF HARTFORD *against* CHIPMAN and others:

IN ERROR.

It is an established principle of equity, that where an instrument is outstanding against a party, which is void, or an unfounded claim is set up, which, he has reason to fear, may, at some time, be used injuriously to his rights, thereby throwing a cloud over his title, equity will interfere and grant the appropriate relief.

Therefore, where the defendants claimed an unfounded lien on certain real estate of the plaintiff, and it appeared, that such claim prevented purcha-

sers of the estate from making payment of the stipulated price; on a bill in chancery, asking for a discovery, and that the cloud upon the plaintiff's title, be cleared away; it was held, that the plaintiff was entitled to the relief sought.

*Hartford, June, 1852.*

*Chipman v. City of Hartford.*

The cases in which the court has refused its interference to remove the cloud, are where such interference was unnecessary, vexatious and expensive, because the instrument or other proceeding in question, was void on its face, or had already been adjudged void.

To oust a court of equity of its jurisdiction, on the ground of remedy at law, that remedy must be obvious, adequate and complete.

And this being a question of jurisdiction, it is to be considered as a preliminary one, and should be taken by demurrer to the bill, or in the answer.

Where one of the defendants had sold the land in controversy, and conveyed it, with covenants of seisin and warranty; it was held, that he still had such an interest in the question of title, by reason of his covenants, as to make it proper that he should be joined in the suit.

After the appointment of a committee in chancery, and a full investigation of the merits of the bill, the objection of the want of proper parties, or of misjoinder of parties, comes too late.

THIS was a bill in chancery, brought originally to the county court, against the city of *Hartford*, praying for a discovery and other relief.

The material facts in the case appear in the report of the committee, to whom the matter in dispute was referred.

The premises described in the bill belonged originally to Capt. *Samuel Marsh*, who died in the year 1803, and devised the same to *William H. Marsh, Charles Marsh, Samuel J. Marsh* and *Edward Marsh*, his grand-sons, and sons of his son *Samuel Marsh*, jun.

*Charles* and *Samuel J.* died after the testator, in the years 1803 and 1804, intestate and without issue; and all their interest in the premises became vested equally in their surviving brothers, *William H.* and *Edward*, and their sister *Catherine Marsh.*

In the year 1818, by a legal partition of the premises, by decree of the county court of *Hartford* county, the *Northern* section thereof, being 105 feet in front, was set to *Edward;* the middle section, being 100 feet in front, to *Catherine;* and the *Southern* section, being 160 feet in front, to *William H.*

*Edward* died in the year 1828, and his section, by purchase from his administrator, the same being sold by order of court, became legally vested in *William H.*

*William H.* died in the year 1832, seised of both sections; and by will, he devised all his interest in the premises, in

equal undivided shares, to *Catherine Smith, Anna Smith* and *Sarah DeForest Smith,* daughters of the above named *Catherine Marsh.*

*Catherine Marsh* had, some time before, been married to *George Smith,* who died about the year 1830. And she remained sole from that time till her death, which occurred in the month of *August,* 1850.

There was no other change of the title until after the year 1845, and after all the proceedings of the common council set forth below.

Thus, in the year 1845, and during all the time covered by the proceedings of the common council, the premises were owned as follows, *viz.* the *Northern* and *Southern* sections, in equal and undivided shares, by *Catherine,* jun., *Anna* and *Sarah.* The middle section was held in severalty, by *Catherine,* sen.

During all the year 1845, and the time above referred to, the dwelling-house, which stood upon the *Southern* section, was occupied, with the garden adjoining, by *Tudor Adams;* and the rest of the premises, as a grass lot, by *Joseph Sheldon,* who occupied as the tenant of *Catherine,* sen., and her daughters, and *Adams,* as the tenant of the daughters. There was no other tenement, except the dwelling-house, on the premises. *Anna* and *Sarah,* during this time, lived upon the premises, as boarders in the family of *Tudor Adams. Catherine,* jun., resided in *Cuba,* in the *West Indies. Catherine,* sen., was insane, and an inmate of the *Retreat for the Insane,* at *Hartford. Catherine,* jun., *Anna* and *Sarah,* were then all unmarried.

The common council of the city of *Hartford,* in the year 1845, established a new grade of side-walk in front of the premises. All the particulars of the action of the common council in connection therewith, are found in the records of said council; and a copy of all of said records pertaining to such matter, is hereto subjoined.

The committee found all the facts which those records legally prove; and that, under the direction of the vote passed by said council, on the 26th day of *May,* 1845, *Henry Francis,* Esq., clerk of said council, left a certified copy of said vote at the house upon the premises, within the time required by law, with said *Anna Smith;* and that no other

notice of said order was given to any of the parties interested.

The committee further found, that, during all the time covered by the proceedings of the common council, *Cornelius Burt* held the office of street commissioner of the city of *Hartford,* and that, as such commissioner, he made said walk by order of said council ; that his bill for making the same was 200 dollars, 77 cents ; which bill was presented to and approved by said council, and was ordered, by said council, to be paid out of the treasury of said city, and was referred by said council to the city attorney for collection against the heirs of *Samuel Marsh.* This bill has never yet been paid to said city, nor any part of the same ; and said city claims a lien on the premises therefor, under the statute providing for such case.

Since the year 1845, *Catherine,* jun., has been married to *Wells J. Babcock,* of the city and state of *New-York,* and *Anna,* to *George C. Chipman,* of the town of *Waddington,* in the state of *New-York.*

Upon the death of *Catherine,* sen., in *August,* 1850, all her interest in the premises became vested in *Catherine,* jun., *Anna* and *Sarah.* Soon after, and before the bringing of the bill in the present case, *Wells S. Babcock* and his wife, *Catherine, George C. Chipman* and his wife, *Anna,* and said *Sarah De Forest Smith,* conveyed all of the premises, except about eighty feet front at the *North* end, by warranty deed, with the usual covenants against incumbrances, to *Alfred Smith, Charles-Brainard,* and *Charles H. Brainard ;* and about the same time, said *George, Anna* and *Sarah,* by a quit-claim deed, released to *Wells J. Babcock* and *Catherine,* his wife, all their interest in said eighty feet front, remaining after the conveyance above-mentioned.

It was also proved, (subject to an objection by the defendants, to the evidence,) that said *Smith* and *Brainards,* in consequence of the lien claimed by the city of *Hartford,* on the premises, withheld a part of the consideration of said conveyances, and refused to pay the same to the plaintiffs, until they should give them security to save them harmless from said lien ; which security said *Wells, George* and *Sarah* thereupon gave ; and which security is now held, by

said *Alfred Smith*, and by said *Charles H. Brainard*, as survivor and executor of said *Charles Brainard*.

Extracts from the records of the court of common council of the city of *Hartford*, above referred to.

*May* 12, 1845.

"Voted that the highway committee be directed to lay out a side-walk (if in their opinion it be necessary,) on the *West* side of *Main* street from *Albany* street *North* to the city line, and report the same to this court."

*May* 26th, 1845.

"Report of the highway committee to whom was referred a resolution respecting a new grade of side-walk on the *West* side of *Main* street, between *Albany* street and city line, accepted, and the following resolution was passed, *viz:*

"Voted, that a new grade of side-walk be laid out on the *West* side of *North Main* street, between *Albany* street and the city line, to commence at the city line, on the *North*, and extend. on a true descending grade, to the *North* side of *Albany* street ; the altitude at the *North* end to be the surface of the ground at the city line ; the altitude at the *South* end to correspond with the walk on the *South* side of *Albany* street. The outer line to be a straight line, parallel to and ten feet from the street line ; and that the city clerk be ordered to notify the adjoining proprietors to flag four feet of the outer side of said grade with *Bolton* stone, on or before the first day of *July*, 1845."

*June* 23rd, 1845.

"Remonstrance of *D. S. Brooks* and others against carrying into effect a recent order of the court for new grading and flagging a side-walk on the *West* side of *North Main* street, fronting the property owned by the heirs of *Samuel Marsh*, deceased, read, and after debate thereon, it was ordered to be lodged on file."

*July* 14th, 1845.

"Whereas the court of common council find, that an order for laying out and constructing a side-walk, and establishing a new line and grade, and flagging the same with *Bolton* stone, on the *West* side of *North Main* street, between *Albany* street and the city line in said city, was passed by them, on the 26th day of *May*, 1845 ; and whereas said court find,

that a part or all the proprietors required to construct, grade and flag said walk, have neglected to execute the same, within the time limited : Therefore, *voted*, that the street commissioner be, and he is hereby, appointed to carry into effect the aforesaid order in front of each of the proprietors of the lands and buildings fronting said side-walk, who have neglected to execute the same."

*Hartford*,
June, 1852.

Chipman
*v.*
City of Hartford.

*Sept.* 8th, 1845.

"Heirs of *Samuel Marsh* to the city of *Hartford*—bill of 200 dollars, 77 cents, referred to the city attorney for collection."

From the facts so found by the committee, the court adjudged, that the city of *Hartford* had no claim to or lien on the premises, or any part thereof, for the expenses of making the side-walk referred to in the bill. The court therefore decreed, that the premises, and every part thereof, be, and were declared to be, released and discharged from the lien claimed by the city of *Hartford*. Consequently, the bill was dismissed, with costs. The defendants thereupon filed their motion in error, bringing the record before the superior court for revision, in which it was continued for the advice of this court.

*L. F. Robinson*, for the plaintiffs in error, contended, 1. That the case presents no such state of facts as will warrant the interposition of a court of chancery. The decree finds, that there is no lien or incumbrance upon the land in question, on account of the invalidity of the proceedings upon which the claim of lien was founded. Although void contracts and void proceedings may create an apparent cloud on the title, yet inasmuch as the remedy against them, *when void on their face*, is perfect at law, chancery cannot interfere to set them aside. Such is the well established law with respect to void contracts, deeds, annuities, &c. *Gray* v. *Mathias*, 5 *Ves.* 286. *Simpson* v. Lord *Howdon*, 3 *Mylne & Craig*, 97. Duke of *Bolton* v. *Williams*, 2 *Ves.* jun. 154. *Smyth* v. *Griffin*, 3 *Simon*, 245. S. C. 14 *Law Journ.* 28. *Bromley* v. *Holland*, 7 *Ves.* 21. 24. *Piersol* v. *Elliot*, 6 *Pet.* 95. *Franco* v. *Bolton*, 3 *Ves.* 368. 371. *Ryan* v. *Mackmath*, 3 *Bro. Ch. Ca.* 15. The same rule is applicable to invalid proceedings under statutes or charters. If a cloud

*Hartford,*
*June, 1852.*

*Chipman*
*v.*
*City of Hart-*
*ford.*

on the title is the effect of a *void* city assessment, a court of chancery will neither interfere to set it aside, nor enjoin an attempt to enforce it.   *Van Doren* & al. v. Mayor, &c. of *New-York,* 9 *Paige,* 388.

2. That the bill is so defective, through the joinder of improper parties, and the omission of proper parties, as to make it impracticable for the court to found a just and effectual decree upon it.   *Gaston* v. *Plum,* 14 *Conn. R.* 344.   *Mechanics' Bank* v. *Seaton,* 1 *Pet.* 305.   *Coop. Eq. Pl.* 33. 185. *Sto. Eq. Pl.* § 73.

*Goodman,* contra, insisted, 1. That the facts of the case, as stated and found, entitled the plaintiffs to relief : they had no other remedy.   The defendants could not bring a suit at law against the plaintiffs, or compel the plaintiffs to bring one against them.   The city of *Hartford* claimed, that they had proceeded *legally.*   Their proceedings were *not void* on their face.   It was only by examining into extrinsic matters, that their invalidity could be made out.   To defeat a bill in chancery, on the ground that there is adequate remedy at law, the remedy must be full, clear and complete: if difficult or doubtful, a court of chancery will entertain jurisdiction. *New-London Bank* v. *Lee,* 11 *Conn. R.* 112.   *Wheeler* v. *Clinton Canal Bank, Harring. Ch.* 449.   *Johnson* v. *Hyatt,* 3 *Barb.* 275.   *Lane,* exr. v. *Morrel* & al. 3 *Edw. Ch. R.* 185.

2. That the objection to the parties, comes too late.   It can only be made on demurrer to the bill, or in the answer. *Le Roy* v. *Platt* & al. 4 *Paige,* 77.   *Fulton Bank* v. *New York & Sharon Canal Co. Id.* 131.   *Grandin* & al. v. *Le Roy* & al. 2 *Paige,* 509.   2 *U. S. Eq. Dig.* 147. and cases cited *ib.*

CHURCH, Ch. J.   The plaintiffs allege, that they were owners of certain premises in the city of *Hartford,* as the devisees and heirs at law of *William H. Marsh,* deceased.   That the authorities of said city, as long ago as 1845, caused a side-walk to be laid out and constructed in front thereof, and assessed upon the heirs of said *Marsh,* for the expenses of the same, a large sum of money, for which the city has claimed, and still claims, a lien upon said premises, by virtue of the provisions of the statute laws relating to the city

of *Hartford :* that the plaintiffs, not knowing nor believing, that any such lien or incumbrance upon said property existed, or could be legally claimed, on the 10th day of *September,* 1850, sold and conveyed the same, by deeds of warranty, with the usual covenants of seisin and warranty, and that the same were free from incumbrance, to *Alfred Smith* and *Charles Brainard,* of said *Hartford :* that said *Smith* and *Brainard* decline and refuse to pay to the plaintiffs the full amount of the purchase money, for which said premises were sold, but withhold the same, by reason of the aforesaid pretended lien of the city of *Hartford.*

The plaintiffs do not admit the existence of any such lien, and pray, that the city disclose the grounds of their claim and the amount of their lien, if they have one, and that the premises be discharged from any such lien or incumbrance ; and that said city be enjoined against prosecuting the same, if none is found to exist ; or if otherwise, that, upon being paid by the plaintiffs the amount of the same, the city be ordered to release to them all rights and claims to said premises.

The county court to which the bill was preferred, found, that the city of *Hartford* had no such lien as was claimed, and made its decree accordingly, upon the coming in of the report of the committee, to whom the matter had been referred. Whereupon this motion in error was filed and allowed.

The principle upon which this application is made, is one well recognized by courts of equity ; the fear that the claim set up by the defendants, may, at some time, be used injuriously to the plaintiffs' rights, and that it throws a cloud or doubt over a title in which they are interested. 2 *Sto. Eq. p.* 5, 6. § 694. 705.

But to the application of this principle to the present case, the defendants, for various reasons, object.

1. That, if there is no lien upon the premises, as the plaintiffs insist, this is apparent upon the face of the proceedings of the common council of the city of *Hartford,* as they are set forth upon the record, and as claimed by the plaintiffs in their bill. The defendants insist, that this case is assimilated to those in which applications have been made for the delivery up or cancelling of bonds, deeds and other instruments, not voidable merely, but void, for causes apparent on the face

of them.  And it is true, that in some such cases, courts of equity have refused to interfere ; but this, we believe, has been where interference has been seen to be entirely unnecessary, and the application, in its tendency or purpose, vexatious and expensive, as where the instrument sought to be delivered up and cancelled, was connected with nothing else, and affected nothing else ; as a note or bond without a stamp, or illegal on its face, and thus harmless, in whatever place it might be.

There is a want of harmony in the decisions on this subject.   We will refer to a few leading ones, relied upon by the defendants, the better to show the real principle of equity, and the distinction between those cases and the present.

The case of *Simpson* v. Lord *Howden,* 3 *Mylne & Craig,* 99. was an application to cancel an agreement, which the applicant claimed was void on its face, as against public policy, and on which an action at law was then pending.   The objection was, that, in such case, a court of equity had no jurisdiction, and the bill was dismissed.   The Lord Chancellor said, that he knew of no case going such a length—that there was no precedent for it—that in the case before him, he could do nothing, but merely order the agreement to be delivered up.   No consequential relief was sought, no account to be taken, &c.   Whether the defendant proceed in the action he has brought, or bring another action, the same questions must be raised and decided, as are raised in the bill.   But by permitting the action to proceed, it will afford to the parties the most speedy, cheap and satisfactory means of deciding the question between them.   It is very certain, that no necessity existed for the application in this case; and that, in its nature, it was vexatious.

In the case of *Pearsol* v. *Elliott,* 6 *Peters,* 95. the supreme court of the *United States* refused to order a deed of conveyance of land to be given up, which, it appeared, had not been duly acknowledged, by one of the grantors, who was a *feme covert.*   But it appeared, in that case, that, before the bill was instituted, the deed *had been adjudged void,* in an action at law between the *same parties.*   The ground assumed by the court, was, that the paper was unimportant, and could not avail its possessor, because it had been declared void by judgment of court, and therefore, the bill was unnecessary

and expensive ; and no other ground of equitable interference was pretended.

The case of *Van Duren* v. *The Mayor*, &c. of *New-York*, simply recognizes the abstract doctrine of the case of *Simpson* v. Lord *Howlon*, in 3 *Mylne & Craig*, without referring to any other case or principle, not even to the able opinion of Chancellor *Kent*, in *Hamilton* v. *Cummings*, 1 *Johns. Ch. R.* 517.

While we acknowledge the propriety and reasonableness of the decisions referred to, we see other facts and peculiarities in this case, clearly distinguishing it from them.

This bill does not ask for the bare cancellation of a deed. The city of *Hartford* had instituted certain proceedings, which, they claimed, had resulted in fixing a lien upon the property of the plaintiffs—it insisted upon the lien, and the plaintiffs had right to suppose, from some other cause or reason, than the records here produced, disclosed. This claim, whether legally existing or not, worked an injury to the plaintiffs, by creating such a doubt as, in fact, to cause purchasers under them to withhold payment. In this state of things, the plaintiffs could indeed have sued *Smith* and *Brainard*, and have been met with some defence, or by an application for an injunction against their further proceedings, and thus become involved in an expensive litigation in the dark ; or they could ask, as they have done, to have this cloud cleared away.

This bill asks for a discovery, not frivolously, but for the purpose of information, of the grounds of the continued claim of the defendants, and to compel them to relinquish it, if no lien existed, and to enable the plaintiffs to redeem, if it did. In reference to such a case, Judge *Story* says : " Where the party is seeking a discovery, as the means of arriving at relief, by the delivery up or cancellation of a void instrument, it seems difficult to understand why a court of equity, having acquired a full jurisdiction in the case for discovery, should not, when that is obtained, proceed, for the purpose of preventing multiplicity of suits, to make a decree for the relief sought. But where no discovery is sought, and the naked case made by the bill, is for a mere delivery up or cancellation of the instrument, not averring any defect of proof, but

simply stating, that the instrument is void, there might be more colour for some scruple in entertaining the bill." 2 *Sto. Eq.* 9. 11. § 699.

Aside from any discovery sought, this bill is not merely *quia timet,* but the claim of the defendants is working a present injury, by actually preventing purchasers from making payment of the stipulated price to the plaintiffs, by reason of the cloud upon their title. 2 *Sto. Eq.* 11. § 700. In the case of *Simpson* v. Lord *Howdon,* an action at law was pending, to try the same question; and in the case of *Pearsoll* v. *Elliott,* the same question had been already determined; but here the plaintiffs were left in the dark and in doubt, because the defendants still insisted upon their lien, and yet instituted no means to enforce it. They have left the plaintiffs to the expence of determining their rights, only in this way, and by this bill; and now, not until after the county court, upon this hearing, has decided, that no such incumbrance exists, the defendants very ungraciously say, yes, this is true, and so obviously true, that the plaintiffs have never been in danger, and have had no just occasion to bring us into a court of equity. Indeed, the defence is, that as, after an expensive and long defended application in equity, the plaintiffs have succeeded in establishing their claim, this is the very reason why they are not entitled to relief. If the defendants had demurred to the bill at first, acknowledging their want of a lien, their defence would have appeared better. We are impressed with the good sense of the remarks of Chancellor *Kent,* on this subject, in *Hamilton* v. *Cummings,* 1 *Johns. Ch. R.* 517. in which case all the cases are reviewed. He says, " Perhaps the cases may all be reconciled, on the general principle, that the exercise of this power is to be regulated by sound discretion, as the circumstances of individual cases may dictate," &c.

2. Another suggestion of the defendants is, that these plaintiffs have adequate remedy at law, by action for the stipulated price of the land sold to them, and there being no incumbrance, there can be no defence. To oust a court of equity, for this reason, of its jurisdiction, the remedy at law must be obvious, adequate and complete; and, as this objection raises a question of jurisdiction, it should be considered

as a preliminary one, and should have been taken by demurrer to the bill, or by the answer, unless the court, from *defect of power*, was incompetent to grant the relief prayed for. Here the objection is only suggested, after a full hearing by a committee, and for the first time, on this motion in error. The objection now comes too late. *Grandin* v. *Le Roy*, 2 *Paige's Ch. R.* 509. *Fulton Bank* v. *New-York & Sharon Canal Co.*, 4 *Paige's Ch. R.* 131. *Le Roy* v. *Pratt, Id.* 77. *Underhill* v. *Van Cortland*, 2 *Johns. Ch. R.* 369. *Mitford's Pl.* 27. note. Besides, the plaintiffs had no remedy at law against these defendants. We are not aware of any case which decides, that if a plaintiff has an equity against the defendant, a court of equity loses its jurisdiction, because there may be a remedy at law, at the election of the party, against a stranger, or some other person.

3. Objection is further made, that the plaintiffs, or some of them, have sold and conveyed the lands, and have now no interest in them, which a court of equity can protect. It is true, they do not own the *land* itself, but they have an essential interest in the question of title, by which the purchasers under them hold the land, by reason of the covenants for title in their deeds. It is obvious, that their interest is as direct as if they now held the land.

Lastly, the claim is made, that here is a misjoinder of parties, and a want of parties. From the view we have taken of the interest of some of these plaintiffs, by reason of the covenants in their deeds, and the interest of others still in the lands themselves, we perceive no misjoinder; and if there had been, such misjoinder appearing on the bill itself, and not coming out merely at the hearing, we incline much to the salutary principle adopted by this court, as to the objection for want of parties, in the case of *Lee* v. *New-London Bank*, 11 *Conn. R.* 120. and other cases, as applicable here, and that this objection comes too late after the appointment of a committee, and a full investigation of the merits of the bill. In such cases, the defendants in equity ought to be considered as waiving these objections, and ought not to be permitted to take their chance against the plaintiffs on the merits, and then, if unsuccessful, to resort to such a defence.

We shall advise, that there is no error in the decree of the county court.

WAITE, J., was of the same opinion.

STORRS, HINMAN and ELLSWORTH, Js., being interested, did not sit in this case.

Judgment affirmed.