### NATHANIEL F. POTTER *vs.* ZELOTES W. HOLDEN AND OTHERS.

*A* executed and delivered to *B* sundry notes and a mortgage of personal property to secure them, to indemnify him for indorsements made and to be made for *A's* accommodation, with power to dispose of the property if the notes indorsed were not paid. *B* had at the time indorsed *A's* paper to the full amount of the security, but before he had become liable on any of his indorsements he assigned the mortgage and the notes secured by it to *C*, with the same power to dispose of the mortgaged property that he had himself. Held that the assignment was valid and conveyed to *C* the interest of *B* in the notes and mortgage.

*B* afterwards paid a large amount on his indorsements. Held that *C* at once took the benefit of these payments and acquired to that extent a definite interest in the mortgaged property.

*C* took the assignment of the notes and mortgage as trustee for sundry parties who held paper which it was the purpose of *B* to secure by the transaction, and brought a bill for a foreclosure as trustee for these parties. Held that he could prosecute the suit in this capacity.

A bill in equity is never to be dismissed for want of necessary parties. Persons interested and who ought to be parties can either come in voluntarily and make themselves parties, or can be summoned in.

BILL in Equity, for the foreclosure of a mortgage of personal property and a sale of the mortgaged property, brought by the petitioner as trustee for the Bank of North America, a corporation located at Providence in the state of Rhode Island, and for other parties interested. The principal facts, as found by the court, were as follows:

On the 5th day of November, 1859, Oliver S. Bradley, the principal respondent, executed and delivered to Zelotes W. Holden, another of the respondents, four negotiable promissory

notes of $5,000 each, dated respectively September 1st, 10th and 20th, and October 1st, 1859, payable six months after date to the order of Holden at the Bank of North America, and on the same day executed and delivered to him a mortgage of certain machinery in a woolen mill, the condition of which was as follows:

"The condition of this deed is such, that whereas I, the said Oliver S. Bradley, have executed my four promissory notes, each for the sum of $5,000, one bearing date the 1st of September, 1859, one the 10th of September, 1859, one the 20th of September, 1859, and one the 1st day of October, 1859, and each payable in six months from the date thereof, to the order of Zelotes W. Holden, and by him indorsed: Now therefore, if I, the said Bradley, or my heirs, executors, administrators or assigns, or any other person for me or for them, shall pay said notes at maturity, and save harmless and from protest the said Holden from all loss and damage in consequence of his said indorsements thereupon, then this deed shall be null and void, otherwise shall be and remain in full power and effect. Furthermore, I, the said Bradley, do hereby constitute the said Holden, his executors, administrators and assigns, my attorney irrevocable, with full power of substitution and revocation, for me and in my name, or in their name or names, at any and all times, in case default shall be made in the payment of either of said notes and such default shall continue for the term of thirty days, to sell at public auction the property aforesaid, or any part thereof, they first giving, after the expiration of said term of thirty days, ten days' notice of said sale in writing; and in my name, or in their name or names, to execute, and deliver to the purchaser or purchasers thereof, any deed or other instrument that may be necessary to vest in such purchaser or purchasers a full and absolute title therein; and on sale thereof, (hereby granting unto my said attorneys authority to receive the amount the same may be sold for, and after the payment of the expenses incident to said sale to apply the residue thereof to the payment of the principal of said notes, and any and all damages or losses the said Holden may have sustained in the premises,) accounting to me, my heirs

and assigns, for all sums over and above the amount thereof, hereby approving and confirming such sale or sales as may be made or caused to be made by virtue hereof. In testimony whereof I have hereunto set my hand and seal this fifth day of November, A. D. 1859."

The mortgage was immediately put on record in the town of Putnam, where the mill which contained the machinery was located. At the time of the execution and delivery of this mortgage and the notes, Holden had indorsed Bradley's negotiable paper for the accommodation of the latter, to an amount exceeding $20,000, and it was then understood between them that he should continue to indorse for him in the same way. The mortgage and the four notes secured by it were given by Bradley upon an understanding between them that they were to stand as security against any loss which might accrue to Holden by reason of such indorsements then made or that should thereafter be made under the arrangement between them, and there was no other consideration for the notes. Bradley was not at the time indebted to Holden, and the latter had not been subjected upon any of his indorsements, nor were the notes secured by the mortgage indorsed by Holden as stated in the mortgage.

On the 2d day of March, 1860, and before he had paid any thing upon the paper indorsed by him, Holden executed an assignment to the petitioner of the four notes of $5,000 each, and of the mortgage, and delivered the same to him. The assignment was as follows:

"Know all men by these presents, that I, Zelotes W. Holden, of the city of Providence and state of Rhode Island, in consideration of the sum of twenty thousand dollars, to me paid in hand by Nathaniel F. Potter of said Providence, the receipt of which is hereby acknowledged, do hereby bargain, sell and assign, set over and convey unto him, the said Potter, his executors, administrators and assigns, the mortgage of personal property from O. S. Bradley to me, dated the 5th day of November, A. D. 1859, and recorded in the Records of Deeds in Putnam, in the state of Connecticut; together with the notes and debts secured, and all evidences thereof, and also

all my right, title and interest in and to the property mentioned and described in said mortgage; to have and to hold the same, with all the rights and powers with which I now hold the same, particularly with the power of making sale of the said property on breach of the conditions of said mortgage; and for the purpose of making said sale I hereby constitute and appoint him, his executors, administrators and assigns, the true and lawful attorney of said Bradley, and do further authorize and empower him, the said Potter, his executors, administrators and assigns, to use my name in making said sale, and in foreclosing said mortgage, in any way or manner that may be proper, or that the nature of the case may require. In testimony whereof I have hereunto set my hand and seal, this 2d day of March, A. D. 1860."

This assignment was made to the petitioner in trust for the Bank of North America and other persons to whom Holden was indebted or liable, in part on account of paper held by the bank which Holden had indorsed for Bradley, and in part on account of other paper, including future as well as past discounts, the other persons interested being parties to the paper intended to be secured. The petitioner was to collect the notes assigned to him and apply the proceeds in paying such debts and liabilities, and the surplus, if any, was to be returned to Holden or paid to such persons as he might designate.

On the 28th of March, 1860, Holden signed and delivered to the petitioner the following instrument:

"Whereas N. F. Potter, of Providence, holds by mortgage and bill of sale assigned to him by Z. W. Holden of said Providence, certain machinery in the mill and upon the premises of the Putnam Woolen Company, in Putnam, Connecticut, the surplus of which, after certain liabilities provided for in certain obligations signed by the said Potter and dated March 2d, 1860, is now in the hands of said Holden to be disposed of as said Holden and his legal representatives shall direct: Now therefore I assign said surplus as follows, viz: 1st. To pay certain confidentials, amounting in all to the sum of $10,950. 2d. To pay all indebtedness of said Putnam Woolen Company, Burgess & Co., and F. S. Burgess, to Harvey Hoag of New York,

upon which said Holden is liable, and now held by said Hoag, amounting to about the sum of $5,000. 3d. The balance, if any, to be disposed of as F. S. Burgess and myself shall direct. And I hereby agree and order that said Potter shall dispose of said proceeds accordingly. And I agree that the liabilities of said Holden, provided for in the obligations of March 2d, A. D. 1860, are his liabilities as indorser for the Putnam Woolen Company, Burgess & Co., and F. S. Burgess. Signed,

Z. W. HOLDEN.

" N. F. Potter, Esq. Please take notice of the above. The confidentials alluded to are one check, $2,500, one check for $2,800, and one for $750, which you will please pay as directed. ZELOTES W. HOLDEN."

Soon after the assignment of the mortgage and the four notes secured by it to the petitioner, Holden paid the following paper which he had indorsed for Bradley : a note signed by Bradley as agent for the Putnam Woolen Company for $2,000, dated February 25th, 1860, on demand with interest; a check on the State Bank signed by Bradley as agent for Burgess & Co. for $3,250, dated February 25th, 1860, and payable on the 8th of March ; a check on the State Bank signed by Bradley as agent for the Putnam Woolen Company for $2,000, dated March 13th, 1860, payable April 1st ; and a like check for $3,000, dated March 13th, 1860, and payable April 16th; making in all $10,250. Besides the payments thus made there was other paper held by the Bank of North America, executed by Bradley as agent of the Putnam Woolen Company and indorsed by Holden, which remained unpaid, amounting to $5,500. Holden had become insolvent and had no visible property. Bradley had also become insolvent.

The other respondents were persons who had acquired an interest in the mortgaged property by a subsequent conveyance of the same, but the conveyance under which they claimed was made in express terms subject to the mortgage to Holden.

The bill prayed for a decree of foreclosure and for the sale of the property.

The superior court ( Seymour, J.,) held that the four notes of $5,000 each secured by the mortgage were merely pledged

for the personal indemnity of Holden, the mortgagee; that upon the payment by Holden of the three checks and the note before described the debt first accrued to secure which the mortgage was given; that as this debt came into existence after the assignment to the petitioner it did not pass by that assignment, either by the terms of the instrument or by implication; and that consequently the petitioner had no title upon which to stand. The court, therefore, dismissed the bill with costs. The petitioner thereupon moved for a new trial.

*C. S. Bradley* and *B. N. Lapham*, of Rhode Island, with whom was *H. Johnson*, for the petitioner.

1. The petitioner has a sufficient title to enable him to maintain this suit. The terms of the transfer of the mortgage mentioned and of the debt which the same was given to secure, were comprehensive enough to transfer the mortgage debt, the mortgage, the mortgaged property, and all incidents thereto, and all the rights that might grow out of the same. The four notes of $5,000 each were the debt or liability the mortgage was given to secure, the amount that might be collectible on the same to be ascertained by the amount of paper indorsed by Holden and paid by him or which was left unpaid by the mortgagor. These notes were indorsed and delivered to the petitioner before due and at the same time that the assignment of the mortgage and the mortgage debt was formally executed. That the notes and mortgage were pledges in Holden's hands makes no difference, because a pledgee may transfer all his interest in the pledge, (Story on Bailments, §§ 322, 324, 327;) and Bradley, the pledgor, could not redeem them except by paying all the paper indorsed by Holden. It is immaterial to the mortgagor or pledgor by whom the paper is held, whether by Holden, he having taken it up as indorser, or by other parties.

2. Holden having assigned to the petitioner all his interest in the mortgage and the mortgage debt on the 2d of March, 1860, any payment made by him thereafter on paper indorsed by him would inure to the benefit of the petitioner. And especially would this be the case when we consider that the pe-

titioner took as trustee for the Bank of North America and other parties who were the holders of the identical class of paper indorsed by Holden and to indemnify him for indorsing which the $5,000 notes and mortgage were pledged. Equity would give the holders of this paper the benefit of Holden's security by subrogation. 1 Story Eq. Jur., § 502.

*Penrose* and *Halsey*, for the respondents.

1. The condition of the mortgage deed does not truly describe the incumbrance actually intended. There was no consideration for the notes for $20,000. They were never in fact indorsed by Holden, and he was never under any liability in respect to them. They were merely to secure him against loss upon indorsements made and to be made. The court therefore correctly decided that, if the notes were security for any purpose, they were merely pledged for the personal security of Holden. *Jones* v. *Quinnipiac Bank*, 29 Conn., 25.

2. The notes for $20,000 not being the debt secured, the transfer of the mortgage and delivery of those notes did not carry to the petitioner the debt which was secured. It is found that, at the time of the assignment, Holden had not been called upon to pay any of his indorsements; that subsequent to the assignment he did pay those described in the motion, but that that paper was never transferred to the petitioner, nor was there any evidence of an intention to so transfer it. The fact is found that this paper did not pass by implication or construction. But if there was no such finding, this court will not infer facts. They must be found. *Weeden* v. *Hawes*, 10 Conn., 50. Intention is a question of fact, and the finding of the court on this point is conclusive. *Norwich & Worcester R. R. Co.* v. *Kay*, 22 Conn., 603. All that the parties undertook to do was, to assign the mortgage and the $20,000 notes, treating them as the debt secured. If they took a mistaken view of their legal rights the court can not help them. They must bring a petition in which they aver and prove a title in order to obtain relief.

3. Upon the facts stated the decree was correct. If the

mortgage was available for any purpose between the parties, it was only by way of indemnity to Holden, and upon other paper than that described in the mortgage. To that paper the petitioner has shown no title. He has not shown an assignment of the debt to him, nor any intention to transfer the personal security for such debt. An assignment of the mortgage without the debt secured creates at the most a naked trust. 1 Hilliard on Mort., chap. 11, §§ 3, 5. 2 Story Eq. Jur., § 1023, note 4. *Dudley* v. *Cadwell,* 19 Conn., 218. And such assignee can not maintain a petition for foreclosure. *Webb* v. *Flanders,* 32 Maine, 175. The debt is the principal, the mortgage the incident. An assignment of the principal carries the incident, unless it is expressly reserved, but an assignment of the incident does not carry the principal, unless such intention is proved. *Austin* v. *Burbank,* 2 Day, 474. *Crosby* v. *Brownson,* id., 425. *Pattison* v. *Hull,* 9 Cowen, 747. *Jackson* v. *Willard,* 4 Johns, 43. *Green* v. *Hart,* 1 id., 580. *Johnson* v. *Hart,* 3 Johns. Cas., 329. *Runyan* v. *Mersereau,* 11 Johns., 534. *Weeks* v. *Eaton,* 15 N. Hamp., 145. *Furbush* v. *Goodwin,* 5 Fost., 425. 1 Hilliard on Mort., Chap. 11, § 16.

DUTTON, J. On the 5th of November, 1859, Oliver S. Bradley mortgaged the property, now sought to be foreclosed, to Zelotes W. Holden, and gave him authority on breach of the condition to dispose of it. The instrument purported to secure four negotiable notes of $5,000 each, payable to the order of Holden, six months from date. The real object of the parties was to secure various indorsements which had been made or were to be made by Holden, for the accommodation of Bradley. Holden conveyed the legal title of the property and indorsed the notes to the petitioner for the benefit of the Bank of North America and others. This was done before Holden had become liable on any of his indorsements. The other respondents have no higher equitable rights than the mortgagor. The superior court dismissed the petition on the ground that the petitioner, not being the owner of any of the notes for the indorsement of which the security was given, and having taken the convey-

Potter *v.* Holden.

ance of the property before there was any liability on the indorsements, had no standing in court.

We think this conclusion was erroneous. Where creditors are not concerned we think parties may in general make such contracts, not in violation of law, as they think proper. A mortgagor may secure an indorser for his own personal liability only, or he may secure the notes which he has indorsed. It is frequently doubtful which of these was intended, but there can be no doubt that the parties can do whichever they choose. In this case the mortgagor evidently wished to secure the indorser personally, and not only so, but to make the indorser's security available to him in the transaction of business. For this purpose it was put into the form of negotiable notes. These notes would be collectible in the hands of a bona fide holder, whether the indorser became liable on his indorsement or not. We see no reason why, by agreement of the parties, a future liability could not be made a sufficient consideration for a note, rendering it collectible by the promisee as soon as the liability should become fixed. We understand that it is a common practice for banks to take the notes of a promisor as collateral to discounted paper, and we can easily see that it would frequently be a great convenience. In the present case Holden held such negotiable paper, secured by a mortgage of personal property, with full power to dispose of the same if the mortgagor should fail to pay the indorsed paper, and apply the avails either to the payment of the debts or to indemnify himself. Before he had become liable on his indorsements, he indorsed the negotiable paper which he held as security and transferred the mortgaged property to the petitioner, giving him the same power to dispose of it which he himself had. There was no consideration for this transfer, but the object was to make the petitioner a trustee or agent to carry into effect the arrangement between the mortgagor and Holden. We see no reason why, in the absence of all adverse claims of creditors, Holden could not in this way vest in the petitioner the legal title to the property, and at least his equitable title to the negotiable notes. If so, the petitioner became not immediately, but as soon as Holden had become liable upon the

paper which he had indorsed, authorized to dispose of the notes and mortgaged property for the benefit of Holden, or of such persons as he had directed or should direct. Holden, who would have had the right on payment of the mortgage debts to collect the money, had transferred this right to the petitioner, giving to him the same rights and powers which he would have had himself. In this view of the case we see no reason why the petitioner is not entitled to relief, and we think the superior court erred in dismissing the bill.

The ground which we have taken is sustained by good authority. In *Shirras* v. *Caig*, 7 Cranch, 34, the condition described a bond of $30,000 to all the mortgagees, whereas the mortgage was intended to secure various individual liabilities. The court held the mortgage good between the parties for that purpose, and it is not intimated that the bond was not secured by it. In *Mix* v. *Cowles*, 20 Conn., 603, the mortgagor gave a note for $200, the consideration of which was goods sold and to be sold by the mortgagee to the mortgagor. The mortgage was held to be good even against creditors, to the extent at least of the goods sold when the mortgage was given. These cases cover the whole ground claimed by the present petitioner. He holds the legal title to the property, and is the indorsee and holder of the four $5,000 notes.

There is another view of the case, which, without taking into consideration the point already discussed, shows with equal clearness that the decision was erroneous. It is not denied that the condition of the mortgage has been broken and that some one has a right to a foreclosure. But the petitioner holds the legal title to the mortgaged property, and therefore must be a party to any bill brought for that purpose, and he has clearly a right to be a plaintiff. We have then a bill pending, in which there are at least some of the proper parties both for and against the suit. It is a well settled rule in equity that a bill should never be dismissed for want of necessary parties. If there are any other persons besides the petitioner who have an interest in this mortgage, they can come in and make themselves parties voluntarily, or they can be summoned in. *Nash* v. *Smith*, 6 Conn., 421; *New London Bank* v. *Lee*, 11 id., 112.

It may well be doubted whether it was not too late to take the objection for want of parties. *Chipman* v. *City of Hartford*, 21 Conn., 488; *Bunnell* v. *Read*, id., 586. The petitioner professes as trustee to prosecute this suit solely for the benefit of others. If they acquiesce in this course, why should the respondents object to it? Chancery frequently authorizes a petitioner to prosecute for the benefit of others as well as himself. *New London Bank* v. *Lee*, 11 Conn., 112.

The decree of the superior court must be reversed and the case remanded.

In this opinion the other judges concurred.