ISAAC W. HINE AND ANOTHER *vs.* THE CITY OF NEW HAVEN.

The charter of the city of New Haven authoriz d the common council of the city to make ordinances to protect the city from fire, and to establish districts within which it should not be lawful without a license to erect, enlarge or place any wooden building. The common council passed an ordinance establishing a fire district and forbidding the erection or placing of any wooden building within the district, without license given by the board of aldermen, declaring that such building should be deemed a common nuisance, and making it the duty of certain officers, after reasonable notice, to abate it. Held that the ordinance was fully authorized by the charter and was reasonable.

The prompt enforcement of such an ordinance in case of its violation is important to the public safety, and a court of equity will not interfere by injunction to prevent such enforcement, but leave the party aggrieved to his legal remedy. if he is entitled to any remedy.

It is not a reason for the interference of chancery that the building has become real estate. It has become so by the unlawful act of the owner, and is such only in the most technical sense, and the value of the building can be easily ascertained and proved.

Nor is it a sufficient reason for such interference that the owner had obtained the consent individually of a majority of the aldermen, notice being given him that the board when in session might refuse its assent, as it afterwards did. Nor that he had, after placing the building, covered it with a sheathing of iron and tinned the roof, before proceedings were instituted against him, and had by further work upon it during the pendency of the proceedings made it substantially fire-proof. The city authorities are the proper judges as to how far these facts should affect their action.

And held that the fact that the city, exempt itself from responsibility on the ground that the duty was a public one, might employ persons to demolish the building who were of no pecuniary responsibility, was not entitled to consideration, so long as nothing appeared to show any such purpose on the part of the city.

The objection to the jurisdiction of a court of equity that there is adequate remedy at law, is not one that must necessarily be taken by a plea to the jurisdiction. Where it is manifest that there is a want of equity jurisdiction on this ground, the court may of its own motion dismiss the bill. Where the question is in doubt and there has been a trial on the merits, the court will not of its own motion dismiss the bill, nor will the objection, then taken for the first time, be regarded with favor.

PETITION for an injunction against the demolition by the officers of the city of New Haven of a building placed within the city in violation of a city ordinance; brought to

the Superior Court in New Haven county, and heard before *Phelps, J.* The court found the following facts :

The petitioners are owners of the building referred to in their petition, which both before and after its removal was situated within the fire limits of the city of New Haven. Its dimensions were thirty by eighteen feet, with posts eleven feet in height, one story high, with a single room, and was lathed and plastered, and had been used as a school-house, and at the time of its removal was entirely of wood. The petitioners removed it from the rear of a building on Whitney avenue, near the north end of Temple street, through and entirely within the fire limits of the city, to a point on Howe street, near Whalley avenue, and there placed it on their own land and within seven feet of the dwelling-house of Dr. J. P. Phillips ; after which, and before the commencement by the respondents of their proceedings to obtain its removal, they covered it with sheets of corrugated iron one-sixteenth of an inch in thickness, and tinned the roof; but it stood on blocks, and at the bringing of the petition, and for several days thereafter, was not underpinned, and therefore not fire-proof, but was made so soon after the petition was brought and before the hearing. The value of the building as it stands can be readily ascertained and proved. When located and fitted up it was used as a joiner's shop.

The petitioners applied, on the 19th day of April, 1873, to the fire marshal of the city for liberty to remove the building, telling him that they had got to move it or tear it down before the first of May, 1873, and the fire marshal at their request wrote an application for a permit, addressed to the board of aldermen, for their approbation and signatures. Nine of the fourteen composing the board signed the application, but they were found at their several places of abode or business and were not in session. The fire marshal never in fact gave his permission, but the petitioners in the first place understood from him that if they obtained the consent of a majority of the persons composing the board of aldermen, he would not object to the removal, and that the individual aldermen so giving their signatures would proba-

bly not afterwards, when officially convened, retract their permission so given; but he soon thereafter informed the petitioners, and before they removed the building, that upon examining the city charter and ordinances he was satisfied the action of the aldermen was informal and illegal, and that he could not give his consent, and that if they removed the building they must take the risk of the adverse action of the board of aldermen when the matter came regularly before them. It subsequently, at the first meeting of the board, but after the removal of the building, came properly before the board, and was referred to the appropriate committee, who made an adverse report, which was accepted by the board; all of which was known to the petitioners through the newspaper report of the proceedings on the following morning. Notice to the petitioners to remove the building within a specified time was soon after caused to be issued by the mayor and served by the fire marshal, and it was the intention of the respondents to pull down the building, and abate it as a nuisance, in the event of the petitioners refusing to remove it. The petitioners gave no notice to Dr. Phillips of their intention to place the building on the lot, and did not obtain his consent, and knew that they could not obtain it. The parts of the charter and ordinance of the city relating to the subject are given in the opinion. The court was of opinion, and found and decided, that, considering the character and use of the building, and the readiness and certainty with which its pecuniary value to the petitioners could be ascertained and shown, they had adequate legal remedy, in case they were entitled to any remedy, and on that ground dismissed the bill. The petitioners brought the case before this court by a motion in error.

*Watrous*, for the petitioners.

*Wright* and *Hicks*, for the respondents.

CARPENTER, J. The city of New Haven is authorized by its charter (secs. 12 and 13) to make ordinances " to pro-

tect said city from fire; to organize, maintain and regulate a fire department and fire apparatus; to regulate the mode of building and the materials used for building or altering buildings within said city or any part thereof, and the mode of using any buildings therein, and of heating the same, when such regulations seem expedient for the purpose of protecting said city from the dangers of fire; to regulate the cleaning of chimneys; to establish and designate districts of said city within which it shall not be lawful to erect, enlarge or elevate, or into or within which it shall not be lawful to remove, any wooden building, except by license of said court; to prohibit the erection or use within said city of buildings which by reason of their structure or use are or may become unsafe; and to provide for and enforce the disuse, removal, or demolition of such buildings, or of such parts thereof as are or may become unsafe."

Pursuant to the powers thus conferred, the court of common council established a fire district and defined the limits thereof, and adopted the following ordinance: "No person shall hereafter erect, enlarge or elevate any wooden building of any kind within said fire district, nor shall any person remove any wooden building into said fire district, nor from place to place within said district." Ordinance concerning Fire Department, secs. 26 and 27. In the 41st section it is provided, among other things, that any such building "shall be held and deemed a common nuisance, and any person may, and the mayor of the city, or the chief engineer of the fire department or the fire marshal with the advice of the mayor, having given reasonable notice," &c., "shall abate such nuisance, taking such assistance as may be necessary," &c.

The 29th section is as follows: "The board of aldermen may, upon written application therefor, by vote authorize a permit to be issued in the manner hereinafter provided, to any person to erect, repair, remove or enlarge with wood, any dwelling house on his own land in said district, when they are of the opinion that the same may be done without detriment to others, upon such terms and conditions as they

may prescribe; *provided* that the nearest point of such addition or building when complete shall not be less than five feet from the inner boundaries of such owner's land; and *provided* further, that he shall have given written notice to each of the owners of the adjacent land, at least one week before such application. Any person violating any conditions imposed as aforesaid, shall be subject to the same penalties, and such building or addition shall be treated as a nuisance, in the same manner as if no permit had been granted."

The petitioners, without such a permit, and in violation of the letter and spirit of these ordinances, removed a small wooden building from one place to another within the limits of the fire district, and located it on their own premises, where it now remains a continuing violation of the city ordinance.

Thereupon the fire marshal, by the advice of the mayor, gave due notice to the petitioners to pull down or remove the building on or before a day named, or that the same would be abated under the city ordinances. Further proceedings were arrested by a temporary injunction at the suit of the petitioners. The Superior Court upon hearing the cause dismissed the bill, and the petitioners bring the cause before this court by a motion in error.

The petitioners invoke the aid of a court of equity to protect their building. We think they are not entitled to it.

The ordinance requiring the abatement of the building as a nuisance is clearly and expressly authorized by the charter. The proceeding is a summary one, but not unnecessarily so. All laws having for their object the protection of property from fire, and the health of the community in densely populated cities, must from necessity be promptly and arbitrarily enforced. Police powers of this character are of a high order, and when a case arises should be speedily exercised. Delays incident to the ordinary processes of law would seriously impair their efficiency and could not be tolerated.

The ordinance in question is not only reasonable, but

essential to the protection of the city. A plain and unquestionable violation of its provisions, as in the case before us, demands immediate action. To await the action of the courts through the ordinary process of law might prove disastrous.

This case is distinguishable from a class of cases in which the business transacted in the building, and not the building itself, constitutes the nuisance, like houses of ill-fame, gambling houses, and the like. In this case the danger consists in the structure and location of the building, and is obvious at sight. In the other cases the evil consists in the use of the building, and ordinarily its existence can only be ascertained by a judicial investigation. In the latter cases the evil is limited in its effects, and its extent may be estimated with a tolerable degree of certainty; in the former it may at any moment result in wide-spread ruin and disaster. In the latter the destruction or removal of the building does not repress the evil; it simply transfers it to another locality; in the former the danger is entirely removed. Hence the two classes of cases require essentially different modes of treatment. For these reasons we are satisfied that the ordinance is a reasonable one.

The petitioners therefore are asking a court of equity to protect them in the persistent and defiant violation of one of the most beneficial and important by-laws of the city. They deliberately do an act which endangers the community in which they live, and when the community attempts to avert the danger by the use of perfectly legitimate means, they call upon a court of equity to exert its extraordinary powers to stay the hand of the community, and compel it to submit to the danger, in order that they may enjoy the fruits of their wrong doing. Such a claim requires no answer.

In justice however to the petitioners, two mitigating circumstances should be alluded to. They obtained the consent of a majority of the aldermen, acting severally, and not as a board; but the fire marshal refused to give them a permit, and informed them that the assent of the aldermen thus obtained did not authorize them to remove the building.

They also failed to give the adjoining owners the notice of their application which the ordinance requires. It is further said that they have now made the building fire-proof by means of an iron covering. This may diminish the danger somewhat; but it does not appear that it is wholly removed. Of that, in a great measure at least, the city authorities must judge. A presumption arises from their action that they do not regard it as entirely safe; and, as they will be justified in taking little or no risk, we cannot say that they have misjudged.

But if it be conceded that the building in its present condition is safe, and that its removal will cause unnecessary damage to the petitioners, still we are of the opinion that a court of equity ought not to interfere, but should leave the parties to resort to their legal remedy. The importance of protecting the city from fire, the necessity for strict regulations rigidly enforced, and the dangers arising from anything like a conflict of authorities, should lead courts of equity to be exceedingly cautious in interfering with municipal authorities while engaged in the exercise of powers which partake so largely of the nature of prerogative powers and privileges.

But aside from this; if the building is to be regarded as real estate, it is so only in the most technical sense. When first purchased, and while being removed, it was clearly personal property. It was permanently located and became real estate only through the illegal conduct of the petitioners. They can neither take advantage of their own wrong nor avail themselves of an advantage thus illegally obtained. For the purposes of the case, therefore, we must regard the building as personal property. As such it is susceptible of a definite valuation, and the petitioners can be fully compensated.

We do not sanction the claim that the objection that there is adequate remedy at law should in all cases be taken by a plea to the jurisdiction. When the legal remedy is obvious, and it is apparent to the court that there is a defect of power to proceed in equity, the court may, of its own

motion, dismiss the bill. When the question is in doubt, and there has been a trial upon the merits, the court will not, of its own motion, dismiss the bill for that cause, nor will the objection, then taken for the first time by the respondent, be regarded with favor. *Chipman* v. *The City of Hartford,* 21 Conn., 488.

The further objection that the parties who may be employed to do the act may be pecuniarily irresponsible, is entitled to no weight. It does not appear that the officials who directed the removal or demolition of the building are insolvent, and that fact will not be presumed.

There is no error in the record.

In this opinion the other judges concurred.