Stearns *v.* Bates.

# SUPREME COURT OF ERRORS.

## COUNTIES OF NEW LONDON AND WINDHAM.

### SEPTEMBER TERM, 1878.

Present,

PARK, C. J., CARPENTER, PARDEE, LOOMIS, AND GRANGER, JS.

ANDREW J. STEARNS *vs.* IRA J. BATES AND OTHERS.

The plaintiff made a loan of $3,000 to *P*, taking his note therefor endorsed by *A*. At the same time *P* made his note to *A* for the same sum, payable to *A's* order, with a guaranty of its payment by the defendants, this note and guaranty being intended as a security to *A* for his endorsement. The note of *P* to the plaintiff not being paid, and *P* being bankrupt, *A* endorsed and delivered the note held by him to the plaintiff and assigned to him the guaranty. Held, in a suit upon the guaranty, that the plaintiff was entitled to recover.

DEBT upon a guaranty; brought to the Superior Court in Windham County. The following facts were found by a committee:

On the 3d day of October, 1874, the plaintiff loaned to Jonathan Porter the sum of $3,000, taking a note for that sum payable to the plaintiff or order, in sixty days from date, signed by Porter, and indorsed by Abram K. Gould, David G. Aldrich and David N. Porter. The maker paid the interest on the note in advance. When it fell due it was taken up by substituting for it another note for the same sum, payable to the order of the plaintiff, signed by Jonathan Porter, and indorsed by D. N. Porter and D. G. Aldrich, payable in one month from date. In like manner renewal or substitution notes were given monthly by Porter to the plaintiff for the $3,000, and indorsed by Aldrich, until the following April; the last note bearing date April 19th, 1875, and falling due May 22d, 1875. That note was not paid at maturity but was duly protested and the indorser Aldrich was duly notified.

Stearns *v.* Bates.

All of the notes were discounted by the plaintiff, relying upon the strength of Aldrich's endorsement. At the time and before the last note fell due, Porter, the maker, was unable to pay, and other notes of his went to protest. The last note the plaintiff now holds, the loan being unpaid.

At the time the first note was given by Porter to the plaintiff (October 3d, 1874,) Porter, for the purpose of securing Aldrich for his liability as indorser, executed and delivered to him a note of that date for the sum of $3,000, which remains unpaid, payable to Aldrich or his order, on demand, with interest semi-annually, at the rate of seven per cent. per annum. There was no other consideration for the note. To secure the payment of the note the defendants executed and delivered to Aldrich an instrument in writing under seal, dated October 3d, 1874, which is the instrument on which this suit is brought, and is as follows:

"Know all men that, for value received, and waiving all right to demand and notice, we hereby guaranty to David G. Aldrich and his legal representatives and assigns, the payment of a certain note hereto annexed, dated the third day of October, 1874, payable to the order of David G. Aldrich on demand for the sum of three thousand dollars, with interest semi-annually at the rate of seven per cent. per annum, and signed by Jonathan Porter. In witness whereof we have hereto set our hands and seals this third day of October, A. D. 1874." Signed by Ira J. Bates, Abel Bates and Samuel Porter, all of whom were made defendants.

It was understood between Aldrich and Jonathan Porter that the notes given to the plaintiff should be renewed from time to time, and that the note and guaranty given to Aldrich should stand as security for his indorsement of the renewal notes. On or about the 4th of May, 1876, Aldrich indorsed the note of $3,000 held by him, in blank and without recourse, and delivered it to the plaintiff. On the same day he transferred and assigned to the plaintiff the guaranty and all his right and interest therein. The plaintiff took the note and guaranty with full knowledge of the circumstances under which the same were given, but otherwise in good faith, and

is now the owner of the same. The consideration of the transfer was the liability of Aldrich to the plaintiff as endorser of the note of Porter, which the plaintiff now holds unpaid except by the transfer. Aldrich has not otherwise paid anything on the note.

All these transactions were in the state of Massachusetts, except the signing of the instrument on which this suit is brought, which was executed in Connecticut by the defendant with the knowledge and intent that it be delivered to Aldrich in Massachusetts, and it was so delivered.

Upon these facts the case was reserved for the advice of this court.

*J. J. Penrose* and *G. W. Phillips*, for the plaintiff.

1.  By the law of Massachusetts, which must govern the case, if a third person places his name upon the back of a note before it is delivered to the payee, he is an original promissor. Aldrich was therefore an original promissor with Porter upon the note given the plaintiff. *Samson* v. *Thornton*, 3 Met., 275; *Union Bank* v. *Willis*, 8 id., 504; *Bryant* v. *Eastman*, 7 Cush., 111; *Riley* v. *Gerrish*, 9 id., 104. However this may be, the liability of Aldrich upon the note to Stearns had become fixed by due protest and notice at maturity.

2.  · The note which the instrument was made to secure, and the instrument itself, were upon good and sufficient consideration. By an agreement of parties a future liability can be made a sufficient consideration for a promissory note as security for a surety, guarantor or endorser, rendering it collectible by the promisee as soon as such future liability becomes fixed.

3.  The finding shows that the notes were discounted by Stearns, relying upon the strength of Aldrich's name, and he made the debt his own by transferring the guaranty and the note guaranteed to Stearns, the plaintiff. Porter was unable to pay and bankrupt. It was understood by the parties that the note to Stearns should be renewed from time to time, and that the note made by Porter to Aldrich and the guaranty in

suit should stand as security for Aldrich's liability of all renewal notes.

4.   There is nothing in the point that the names of Gould and D. N. Porter, on the first note, do not appear on the last renewal.   For, from the finding, it appears that the guaranty was given without any knowledge that these names were to be upon the notes to Stearns, but simply the names of Aldrich and J. Porter.   The defendants are not prejudiced by the fact.   It was not shown or claimed that either of these names was of any value.   This, if anything, is a matter of defence, and consequently to lay the foundation for the claim that any security has been given up, it should have been shown that these men's names were of some value.

5.   It will be said that Aldrich has paid nothing upon his note to Stearns.   It is not necessary that he should have done so.   Suppose he had given him a new note and taken up the old one, that would only have been substituting one note for another, without any change of liability.   But he has assigned to Stearns, the creditor, the security made by the defendants.   This is payment in full or to the amount recovered and realized in this suit.   The transaction stands as though he had assigned any other security for the same purpose.   Stearns was entitled to all of Aldrich's securities.   It would be an extreme hardship to compel a person, especially one of small means, against whom the debt could be enforced, to pay the debt in cash, and then commence a suit himself, when, as in this case, the creditor was willing to take an assignment of his debtor's security, collect in his own name and apply in payment of the debt.

6.   The security for a debt, whether it be real or personal estate, or a chose in action, in whosesoever hands it may be, is a fund held in trust for the payment of such debt.   If, as in this case, it is in the hands of the person liable, he may resort to it himself or assign it to the creditor and the latter may pursue the legal remedy ; and the authorities cited are applicable at law as well as in equity.   *New London Bank* v. *Lee,* 11 Conn., 112; *Belcher* v. *Hartford Bank,* 15 id., 383; *Lewis* v. *De Forest,* 20 id., 428; *Potter* v. *Holden,*

Stearns *v.* Bates.

31 id., 385; *Eastman* v. *Foster*, 8 Met., 19; *New Bedford Savings Inst.* v. *Fairhaven Bank*, 9 Allen, 175; *Champion* v. *Brown*, 6 Johns. Ch., 398; *Carpenter* v. *Bowen*, 42 Miss., 28; *Osborn* v. *Noble*, 46 id., 449; *Wooldridge* v. *Norris*, L. Reps., 6 Eq., 410.

*T. E. Graves*, for the defendants.

1.  The contract in suit is a collateral guaranty given to indemnify Aldrich on any payment he should have to make on Porter's note of October 3d, 1874, for $3,000, payable to the plaintiff, and endorsed by Aldrich.

2.  Aldrich has not paid anything on this note; and the plaintiff took an assignment of the guaranty to Aldrich with full knowledge of the above facts, and so cannot recover in this suit. *Little* v. *Little*, 13 Pick., 429; *Swift* v. *Crocker*, 21 id., 242.

3.  Porter's first note to Stearns had three guarantors on it. When due it was paid and taken up by Porter. A new note was given for the same amount with two guarantors on it. After that, by renewal notes, all guarantors except Aldrich were left off, and renewals given by Porter and Aldrich for more than a year, when Porter became a bankrupt. All these transactions, after payment of the first note, were done without the knowledge or privity of the defendants, and so the defendants are not liable in this suit. 1 Story Eq. Jur., §§ 326, 327; *American Bank* v. *Baker*, 4 Met., 177; *Miller* v. *Stewart*, 9 Wheat., 680.

4.  The guarantors on Porter's note having been by consent of Aldrich discharged by the taking up of the note and substituting another without the names of all the guarantors, this prevented the subrogation of the defendants to the rights Aldrich had against his co-guarantors, and so released the defendants from liability to him, and so to his assignee. 1 Story Eq. Jur., §§ 326, 327; Story on Cont., § 872; *Pearl St. Cong. Society* v. *Imlay*, 23 Conn., 16; *Baker* v. *Briggs*, 8 Pick., 122, 129.

CARPENTER, J. By the law of Massachusetts, which gov-

erns the transactions involved in the present suit, Aldrich, by indorsing the note payable to the plaintiff before its delivery to him, became liable as a maker thereof. As between himself and Porter he was a mere surety. As between himself and the plaintiff he was liable absolutely as maker. But conceding that the claim of the defendants is correct, that the contract in suit is a contract of indemnity, that Aldrich has paid nothing on the indorsement for which the indemnity was given, and therefore that he could not recover on this contract—it does not necessarily follow that the plaintiff may not recover.

We are inclined to think that the law is so that Aldrich himself could not recover without payment, or assuming the payment, of the note indorsed. (Whether his liability as maker is equivalent to an assumption of the note is a question we will not now consider.) Otherwise the circumstances might be such that he could recover of Porter, or of his sureties, for the benefit of himself or his creditors, and the plaintiff, for whose ultimate benefit the guaranty was given, might receive nothing.

So too if Aldrich had assigned the collateral note and guaranty to a stranger, who took them with knowledge of the circumstances, we suppose he could not recover unless Aldrich paid the note or some part of it to the plaintiff. As to all such parties the contract is one of indemnity merely, and the principle alluded to applies. If the case depended upon that principle it might be difficult to sustain this action. But there is another principle which applies to the case, and which we think controls it. In *Homer* v. *Savings Bank*, 7 Conn., 478, BISSELL, J., after referring to the English and American authorities, sums up as follows: "The principle to be extracted from these cases is this—that when collateral security is given, or property assigned, for the better protection or payment of a debt, it shall be made effectual for that purpose; and that not only to the immediate party to the security, but to others who are entitled to the debt. And to make them thus effectual a court of chancery will lend its aid. And the reason is that such is the intent of the transaction."

In *New London Bank* v. *Lee*, 11 Conn., 111, it was held that a surety who had paid the debt was entitled to any funds appropriated for its payment remaining in the hands of the creditor; and that the same reasons and equities apply with equal strength when the creditor seeks to apply the funds in the hands of a surety to the payment of the debt. CHURCH, J., says:—" In both cases the security or fund is created for the payment of the debt, and is a trust existing for that specific purpose; and whether the creditor, as in the former case, or the surety as in this, be the trustee, is very immaterial. The trust is created, ultimately, for the benefit of the creditor, or of him who stands in his place by having paid the debt."

That doctrine has been repeatedly recognized and enforced since, and is decisive of this case. *Belcher* v. *The Hartford Bank*, 15 Conn., 381; *Lewis* v. *De Forest*, 20 Conn., 427; *Potter* v. *Holden*, 31 Conn., 385.

The reasonableness of this doctrine and of its application to this case will be apparent from a careful consideration of the nature of this transaction and the interest which each party has in the security. Before the note and guaranty were transferred to the plaintiff Aldrich held them simply as security for his liability to the plaintiff. They were intended to secure that debt and its payment. The legal title to the security was in Aldrich; but it was a naked title, the equitable and beneficial interest being in the plaintiff, who owned the debt. The principal reason, and perhaps the only one, why Aldrich could not bring a suit on the security in this state of things is, that the security might thereby be misappropriated and the debt not paid, thus defeating the intention of the parties. The same reason applies to a stranger who might purchase the security. He would thereby acquire a mere naked title without any beneficial interest. To allow him to recover might divert the funds of the maker to a purpose never designed or intended, and at the same time deprive the owner of his only chance to collect his debt, thus operating as a fraud upon both the debtor and creditor.

But when the security is transferred to the creditor no such

consequences can follow. Before the transfer he was the equitable owner by virtue of his ownership of the debt, and by the transfer he became clothed with the legal title also. Thus he has a better and more complete title than the surety —a union of both the legal and equitable; while the surety had only the legal, which, standing alone, he could not enforce, and could not empower a stranger to enforce. He could vest in himself the equitable title also by paying the debt, and then he could enforce the security or sell it to others. He chose rather to transfer his legal title to the plaintiff, who already had the equitable title, thereby making his title perfect. When he recovers on the guaranty, if sufficient, his debt is paid, the surety is relieved, and the intention of all the parties is carried into effect.

The circumstance that Gould and Porter, who indorsed the first note with Aldrich, did not indorse the later ones, is no defense. The security was given primarily to secure Aldrich for his indorsement. In legal effect it secured the debt, and was a fund for the benefit of any party who might have to pay the debt. If therefore Gould and Porter had continued to indorse, and had been compelled to pay the debt, they would have been entitled to the collateral note and guaranty, and might have recovered of the defendants.

For these reasons we advise judgment for the plaintiff.

In this opinion the other judges concurred