IRONSIDE VS CITY OF VINITA.

Opinion rendered November 24, 1906.

(98 S. W. Rep. 167).

1. *Injunction—Ordinance.*

An ordinance provided that where a wooden building within the fire limits had been damaged more than twenty five per cent same should not be repaired or rebuilt. *Held;* That where the damages was less than twenty-five per cent said ordinance had no application. and a restraining order is a proper remedy to prevent interference with the repairing or rebuilding of same.

2. *Same—Evidence—Duty of Court.*

> An ordinance provided that where a wooden building within the fire limits is injured twenty-five per cent same should not be repaired or rebuilt. *Held;* It is the duty of the Appellate Court, after the trial court found it was a wooden building, to examine the evidence upon which the judgment was rendered.

3. *Police Power—Exercise of, by Municipal Corporations.*

> Mansf. Dig. Art. 752, authorizes municipal corporations to make regulations for the purpose of guarding against accidents by fire and to prohibit the erection of any building, or any addition to any building, more than ten feet high, unless the outer walls thereof be made of brick and mortar, or of iron, or stone and mortar. *Held;* An ordinance providing that no buildings or parts of buildings except those constructed of fire proof material within certain limits, shall be raised, enlarged, or removed to another place within said limit, nor shall any such building be moved within the fire limits without the consent of the town counsel and further that no wooden building damaged more than twenty-five per cent shall be repaired or rebuilt without the consent of said counsel, is within the statute.

4. *Appeal—Review.*

> The Appellate Court will not pass upon a question not put in issue by the allegations of the complaint. Such would compel said court to decide questions as purely original ones, and this was not the purpose for which said court was created.

Appeal from the United States Court for the Northern District of the Indian Territory. Before Justice Wm. R. Lawrence, May 29, 1905.

Suit by Byrd Ironside against the city of Vinita. From a decree in favor of defendant, complainant appeals. Reversed.

On May 2, 1905, the plaintiff filed her original complaint in equity, and defendant on same day filed its answer. On May 15, 1905, plaintiff filed her amended complaint, and alleged: That she resides in the city of Vinita, and that de-

fendant is a municipal corporation, being a city of the second class. That W. B. Coley is the mayor of the defendant; that plaintiff is the owner of lot 44 in block 48 in said city, on which is a one story building 24x80 feet. That the building is constructed of the material as follows: "The outer walls being sided with iron, and the interior walls being of laths and mortar, commonly known as a 'plaster wall;' the roofing being what is commonly known as a 'composition,' being a tar and paper fire-proof roof." That the building was within the fire limits of defendant, and cost over $900, and she was receiving $40 per month rent, and its rental value to plaintiff was that amount. On February 13, 1905, fire broke out in a building adjacent, and the building belonging to plaintiff was partially damaged, being damaged to the extent of about 15 per cent. That she prepared to have the building repaired, "but that the city of Vinita, in which the said building is located, through its officers, namely W. B. Coley, acting as mayor of the city of Vinita, and H. E. Ridenhour as city marshal of the city of Vinita, interfered and stopped the carpenters from doing any work upon the said building notwithstanding plaintiff had the material on the ground to be used in repairing said building and the carpenters hired on the ground to do the work, and that the said interference of the said city of Vinita, through its officers herein named, caused the carpenters plaintiff had employed to repair the building to quit work, and up to the present time, through the interference of the said city of Vinita by its officers, plaintiff has been deprived of her right to have the building repaired and placed in a position so that she could be receiving rent from the same." That said building is not in violation of any ordinance of defendant, and is not damaged to the extent of 25 per cent. of the value of said building. That she can have said building repaired for $109.04. That the same is not a wooden building within the meaning of ordinances Nos. 133 and 134, which are as follows: "Section 133. No

building or part of building other than those constructed of fire proof material within the fire limits shall be raised, enlarged, or removed to any other place within said limits, nor shall any such buildings be moved into the fire limits without the consent of the town council. Section 134. It shall be unlawful to repair or rebuild any wooden building within the fire limits which may hereafter be damaged to the extent of 25 per cent. of the value thereof, without first obtaining permission from the town council." That the action of defendant through its officers is wholly unwarranted in law, and causes her great and irreparable damage. That the building is unroofed and is going to decay on account of needed repairs. That she has no adequate remedy at law, for the reason that it would involve a multiplicity of suits. That she has violated no ordinance of defendant, nor is she violating any law of the United States in the Indian Territory. That defendant is insolvent. "Wherefore, the premises considered, plaintiff respectfully prays that a temporary restraining order be issued against the said city, its officers, servants, and employes, from in any manner interfering with her carpenters, mechanics, and employes, and from interfering with the plaintiff in repairing the building as herein described, which repair was made necessary by the fire on the night of February the 13th, 1905, and for such other and further relief as may seem just and proper."

On May 29, 1905, defendant refiled its answer, and admits the residence of plaintiff, and that defendant is a municipal corporation, that W. B. Coley is mayor, and that plaintiff is the owner of lot 44 in block 48; that she has a building thereon, but denies it is 24x80 feet. "Defendant denies that the outer wall of the building is constructed of iron, but says that it is constructed of paper, plaster, wooden lathing, wooden studding, and corrugated iron siding; denies that the roof is composed of composition, and says that the same is composed

of wooden rafters, wooden sheathing, and tar paper; and denies that the interior of the building is of plaster, and says that it is sealed overhead with paper, plaster, wooden lathing, and wooden joists;" admits building is within the fire limits; does not know the rental value, and demands strict proof; admits it was damaged by fire as alleged; denies that said damage was to the extent of about fifteen per cent.; and alleges that said building was damaged by fire and water to the extent of over 35 per cent.; admits plaintiff attempted to repair said building, and that defendant through its officers stopped her; admits said ordinances are correctly set out ·in complaint; "and admits that said section is the only section of the ordinances of the city of Vinita relating to the repairing of buildings heretofore built which are situated in the fire limits, and which may be damaged by fire;" defendant denies that through the action of its officers, it damaged plaintiff in the sum of $40 per month; denies its action was unlawful, and denies plaintiff has no remedy other than by a court of chancery; denies that the building is not damaged 25 per cent.; "and denies that it is not a wooden building within the purview of the law regulating the repair of wooden buildings within the fire limits of said city;" denies that plaintiff is within the law as well as the ordinances of defendant, and prays no restraining order be granted.

The only evidence presented to the court was in the form of affidavits. The plaintiff presented the joint affidavit of A. F. Fahrney and H. E. Chastain, as follows: "A. F. Fahrney and H. E. Chastain, of lawful age, each on their respective oath states that by vocation they are mechanics and carpenters, and they live in Vinita, Indian Territory; that they know the Ironside building which is on lot 44, in block 48, in the city of Vinita, and that the dimensions for the building are 24x80 feet, with walls between 10 and 12

feet high; that the exterior of the sides of the building are iron, and the interior sidings and ceilings are lathed and plastered, and the building was roofed with tar and paper roof or what is commonly known as composition roof; that it is the same building as mentioned in petition of plaintiff as having been damaged by fire on the night of February 13th, 1905; that the building was worth at the time it was damaged by fire at least $900.00, that it would have cost that amount of money to have bought the material and placed same on the ground and worked it into the building as it stood before the fire damaged it; that the damage done to the building by fire, or the cost to repair the building as the building now stands on May the 1st, 1905, including the labor and material, would cost about $109.04; that this estimate is made by us after inspecting the damage done and calculating the material to be used, and the time it would take in working the same into the building; that the estimate as made, we believe to be a fair estimate, and as near and accurate as can be made possible from the observation of the building. A. F. Fahrney. H. E. Chastain.

"Subscribed and sworn to before me this 1st day of May, 1905. S. E. Smith, Notary Public."

Also the affidavit of J. N. Scott, as follows: Scott, of lawful age, being duly sworn, on his oath states that he is a resident of the city of Vinita, Indian Territory; that he is a mechanic by profession; that he is acquainted with the building on lot 44, block 48, in the city of Vinita, known as the 'Ironside Building,' that the dimensions of the building are 24x80 feet, with walls about twelve feet high, the exterior sides being iron, and the interior sides and ceiling lathed and plastered; that the value of the building as it stood February 13th, 1905, was $900.00; that he has examined the building since damaged by the fire on February 13th, 1905, and to

the best of his judgment the damage done to the building by fire can be repaired for the sum of from $150.00 to $175.00; that he is satisfied it can be done for not exceeding $175; that the building as it will be known is an iron building, being sided with iron, and the ceiling and inside walls lathed and plastered, and that said building was roofed with tar and paper roofing. J. N. Scott.

"Subscribed and sworn to before me this 1st day of May, 1905. James S. Davenport, Notary Public."

The defendant presented the affidavit of D. C. Boswell, as follows: "Personally appeared before me, the undersigned authority, D. C. Boswell, who, after being by me duly sworn, upon oath states that he is a carpenter and builder and contractor for building and has been engaged in the business of building for 52 years; that I live in the city of Vinita and have lived there for over ten years, and have followed my calling here and am still in the business; that at the request of the mayor of the city of Vinita, I made a careful examination of the building in controversy, and find that the outer walls of said building are fourteen feet and seven inches by actual measurement in height; that they are composed of paper, plaster, wooden lathes, wooden studding and corrugated iron siding; that the roof is composed of wooden rafters, sheathing and tar paper and extends up higher than the outer walls; that the building is ceiled overhead with wooden joists, wooden lathes, plaster and paper; that the building was almost completely gutted by fire and damaged by water used by the fire company in suppressing the fire; that over one-half of the roof and over one-half of the ceiling overhead and over one-half of the north wall of the building is entirely ruined; that all of the glass is broken out of the north show window and the mullion of the lower sash is broken out; that one of the large

glass is broken out of the south show window and all of the glass is broken out of the north door; that the glass is broken out of most of the side windows; that after a careful estimate I find that the building is damaged over 35 per cent. of its value by reason of said water and fire; that the building before the fire at a reasonable estimate was worth the sum of $300.00; that it will take at the least calculation $125.00 to place the building in repair.   D. C. Boswell.

"Subscribed and sworn to before me this the 2nd day of May, 1905.   R. V. McSpadden, Notary Public."

Also the affidavit of W. B. Coley, and also the joint affidavit of B. F. Fortner, S. B. Wallace, and J. C. Wilkinson, as follows:   "Personally appeared before me, the undersigned authority, W. B. Coley, who, after being by me duly sworn, upon oath, states that he is duly elected and qualified and acting mayor of the city of Vinita, I. T., that he has read carefully the affidavit of B. F. Fortner, S. E. Wallace and J. C. Wilkinson, alderman of the said city of Vinita, and know the statements therein contained and that he says under oath that said statements are true and he makes the same as his affidavit to be filed herein the same as if the same were copied herein in haec verba.   W. B. Coley.

"Subscribed and sworn to before me this the 2nd day of May, 1905.   (Seal).   R. V. McSpadden.

"Personally appeared before me the undersigned authority B. F. Fortner, S. E. Wallace, J. E. Wilkinson, who after being duly sworn upon oath states, that they are the duly elected and qualified aldermen of the city of Vinita; that they have examined the building in controversy in this cause carefully and that the outer walls of the building is composed of wooden

studding, wooden lathes, plaster, paper and corrugated iron siding; that the outer wall of said building is fourteen feet and seven inches; that the roof is composed of wooden rafters, wooden sheathing and tar paper; that the building is ceiled overhead with wooden joists, lathes, plaster and paper; that the building is located within the fire limits of the city of Vinita; on Wilson st., near the post office and on the principal business st. of said city; that the building was almost gutted by fire; that over one-half of the roof was burned away consisting of paper, sheathing and rafters; that one-half of the overhead ceiling was destroyed; that one-half of the north wall is destroyed; that all of the glass front of the building is destroyed but three panes of the south window and some small panes of glass above the show windows and two small panes in the south door and all of the windows are out of the north windows and other glass out of the other windows; that the building is otherwise damaged on account of said fire, and water used by the fire company in suppressing the same; that after a full, complete and careful investigation of said building we estimate the damage done to said building to be at least 35 per cent. of the total worth of the said building.   B. F. Fortner, S. E. Wallace, J. C. Wilkinson. ·

"Subscribed and sworn to before me this the 2nd of May, 1905.   R. V. McSpadden, Notary Public."

The case was submitted, and judgment rendered as follows: "And now on this 29th day of May, 1905, it being a day of the regular May, 1905, term of said court, said cause comes on for hearing on the pleadings and the evidence, the plaintiff appearing by her attorney, J. S. Davenport, and the city of Vinita being represented by its attorney, D. H. Wilson.   Thereupon the parties to this suit introduce their evidence, in the form of affidavits, and the court having heard

the evidence and the arguments of counsel doth find that the issues are in favor of the defendant, and that plaintiff has no cause for equitable relief against the defendant, to which ruling the plaintiff duly excepted. It is therefore considered, ordered, and decreed by the court that the plaintiff take nothing in this suit, and her cause is hereby dismissed for want of equity, and that the defendant have and recover its costs. To all of which the plaintiff duly excepts."

On June 6, 1905, plaintiff filed her petition for appeal and for supersedeas, which, on June 8, 1905, was allowed, and a writ of appeal ordered to issue by Hon. W. H. H. Clayton, Associate Justice of the United States Court of Appeals, and cost and supersedeas bond fixed at $200.

*James S. Davenport*, for appellant.

*D. H. Wilson*, City Atty. (*P. S. Davis*, of counsel), for appellee.

TOWNSEND, J. This was a suit in equity, in which the appellant (plaintiff) filed her complaint, and asked for a temporary restraining order against the appellee (defendant). The appellant has filed five assignments of error, as follows: "(1) Because the court erred in refusing to grant the injunction prayed for by the plaintiff against the defendant. (2) The court committed an error in dismissing plaintiff's bill and rendering judgment against plaintiff on the ground that plaintiff failed to show any equity in her complaint. (3) The court committed an error in dismissing plaintiff's bill and rendering judgment against her on the grounds that there was no equity in the complaint. (4) The court committed an error in denying to plaintiff the injunction prayed for and dismissing her complaint on the record that the testimony

introduced before the court, as to the complaint and statement of facts introduced in evidence, was insufficient to entitle plaintiff to the relief prayed for. (5) The ruling of the court and the rendition of the judgment is contrary to law and the evidence." The appellant contends that either of her assignments are sufficient to reverse the case, and discusses them all together. If we correctly apprehend the proceedings before the court, the case was submitted for a final hearing at the same time the application was presented for the restraining order, and the finding of the court was not that the complaint did not state a case for equitable relief, but that the court, after hearing the evidence, found that there was no cause for equitable relief. Counsel for appellee seem to concur in this view. In their brief they say: "The court did not hold that plaintiff's complaint did not state a cause for equitable relief, but finds that after having heard the evidence and arguments of counsel that the issues were in favor of the defendant, and that the plaintiff had no cause for equitable relief. The court did not make this finding altogether from the plaintiff's pleading, the plaintiff probably plead a good cause of action for equitable relief, but the court found from the evidence introduced that the evidence did not sustain the complaint. There was really no question of law involved. The complaint alleges a cause for relief, and the answer denies it, and after the evidence was introduced the court found the issues in favor of the defendant, the appellee here."

Section 752 of Mansfield's Digest is as follows: "They shall have power to regulate the building of houses; to make regulations for the purpose of guarding against accidents by fire, and to prohibit the erection of any building, or any addition to any building, more than ten feet high, unless the outer walls thereof be made of brick or mortar, or of iron, or stone and mortar; and to provide for the removal of any building

or additions erected contrary to such prohibition." And
the ordinances adopted by the defendant are as follows: "Sec.
133. No building or parts of buildings other than those con-
structed of fire proof material within the limits shall be raised,
enlarged or removed to another place within said limits, nor
shall any such building be moved into the fire limits without
the consent of the town council. Sec. 134. It shall be un-
lawful to repair or rebuild any wooden building within the
fire limits which may hereafter be damaged to the extent of
25 per cent of the value thereof, without first obtaining per-
mission from the town council." Section 752, it will be ob-
served, is a grant of power "to regulate the building of houses,
to make regulations for the purpose of guarding against accidents
by fire, and to prohibit the erection of any building, or any
addition to any building, more than ten feet high, unless the
outer walls thereof be made of brick or mortar, or of iron, or
stone, and mortar." Ordinance No. 133 applies only to buildings
to be raised, enlarged, or removed, and ordinance No. 134
applies to wooden buildings to be repaired or rebuilt within
the fire limits, which may hereafter be damaged to the extent
of 25 per cent. of the value thereof, without obtaining permission
of the town council.

The plaintiff alleges that she proposed to repair said
building, hence ordinance No. 134 is the only one applicable
to the plaintiff's case, and that is not applicable, unless it is
a wooden building damaged to the extent of 25 per cent. Upon
exactly what ground the court decided this case is not dis-
closed in the judgment. If the court dismissed the com-
plaint because no equitable relief was stated in the complaint,
we cannot agree with the judgment or decree of the court.
If the court arrived at its conclusion from the evidence sub-
mitted in the affidavits, then it must have found that the
building was a wooden building, and damaged more than

25 per cent. The ordinance only applies to wooden buildings, and if it was not a wooden building, then the ordinance had no application, and the restraining order should have been granted. If the court found it was a wooden building, and damaged over 25 per cent., then it becomes the duty of this court to examine the evidence upon which the judgment was rendered. First, we have the affidavits for plaintiff of A. F. Fahrney and H. E. Chastain, who state they are mechanics and carpenters, that they know the building; "that the building was worth at the time it was damaged by fire at least $900; that it would have cost that amount of money to have bought the material and placed same on the ground and worked it into the building as it stood before the fire damaged it; that the damage done to the building by fire, or the cost to repair the building as the building now stands on May 1, 1905, including the labor and material, would cost about $109.04; that this estimate is made by us after inspecting the damage done and calculating the material to be used, and the time it would take in working the same into the building; that the estimate, as made, we believe to be a fair estimate, and as near and accurate as can be made possible from the observation of the building." Second, the affidavit of J. N. Scott, who states he is a mechanic by profession, and knows the building; "that the value of the building as it stood February 13, 1905, was $900; that he has examined the building since damaged by the fire on February 13, 1905, and to the best of his judgment the damage done to the building by fire can be repaired for the sum of from $150 to $175; that he is satisfied it can be done for not exceeding $175."

The defendant then introduces: First, the affidavit of D. C. Boswell, who states that he is a carpenter and builder and contractor for building, "and have been engaged in the

business of building for 52 years; that at the request of the mayor of Vinita I made a careful examination of the building in controversy; that after a careful estimate I find that the building is damaged over 35 per cent. of its value by reason of said water and fire; that the building before the fire at a reasonable estimate was worth the sum of $300; that it will take at the least calculation $125 to place the building in repair." Second, the defendant introduces the affidavit of W. B. Coley, and the joint affidavits of B. F. Fortner, S. E. Wallace, and J. C. Wilkinson. W. B. Coley states that he is the mayor of Vinita; "that he has read carefully the affidavit of B. F. Fortner, S. E. Wallace, and J. C. Wilkinson, aldermen of the said city of Vinita, and know the statements therein contained, and that he says under oath that said statements are true and he makes the same as his affidavit to be filed herein the same as if the same were copied herein in haec verba." Fortner, Wallace and Wilkinson state that they are the duly elected and qualified aldermen of Vinita; that they have examined the building in controversy carefully; "that, after a full, complete and careful investigation of said building, we estimate the damage done to said building to be at least 35 per cent. of the total worth of the said building." What does this proof show as to the value of the building, and the percentage of damage to that value? The three witnesses for the plaintiff, who are carpenters and mechanics, all state the value of the building was $900 at the time of the fire. Fahrney and Chastain estimate the cost of repair to be $109.04. Scott estimates cost of repair at from $150 to $175, not to exceed $175. Boswell, who is a carpenter and contractor, estimates the value of the building at $300, and the cost of repair at $125. The mayor and three aldermen, who do not state what their business is, and do not state the value of the building, estimate the cost of repair at 35 per cent. The conclusion we have arrived at would be that the preponderance of the evidence

is that the value of the building at the time of the fire was
$900, and that the cost of repair, taking the evidence of Fahrney,
Chastain, and Scott for the plaintiff and Boswell for the de-
fendant, would be less than 25 per cent. of that value.

Appellant, in her argument, insists that ordinances
Nos. 133 and 134 are void, No. 133 as being inconsistent with
section 752 of Mansfield's Digest, and No. 134 because it con-
flicts with the general law authorizing the incorporation of
municipalities in the Indian Territory. But this was not
an issue in the court below. It is not alleged in plaintiff's
complaint that these ordinances are void, and hence that
question is not before the court. Elliott on Appellate Pro-
cedure, § 481, says: "It is required by the general doctrine
that the court of last resort should not be required to decide
a question that has not been passed upon by the trial court,
since any other holding would in effect make the Appellate
Court one of original jurisdiction. The true theory is that
there must be a decision by a court of original jurisdiction to
be reviewed by the appellate tribunal, for unless this be so
the Appellate Court becomes a trial court." And in sections
489 and 490: "The cardinal principle of appellate procedure
which requires that questions of which a review is sought
shall first be appropriately brought before the trial court for
decision, makes it indispensably necessary that positions
should not be shifted on appeal, for, if parties were allowed to
change positions, the appellate tribunal would often be com-
pelled to decide questions as purely original ones, and this,
certainly, is not the purpose for which they were created.
It is, therefore, with reason held that parties must stand by
the positions assumed in the trial court and upon which they
asked and obtained rulings. The same rulings are to be re-
viewed and not different ones." Section 489. "The strong
current of authority carries the general principle stated to its

logical conclusion, for the courts are well agreed upon the doctrine that the theory acted upon in the lower court must be adhered to in the higher. The rule that the theory acted upon in the trial court must be adhered to upon appeal finds expression in various forms, but the meaning conveyed, whatever the form of words employed may be, is essentially the same. Some of the courts express the rule by saying that new issues can not be made on appeal, others give it expression by saying that there can be no change of base on appeal, and others by some such expression as that the matter was not contested below and it can not be contested above." Section 490. In City of Charleston vs Reed, 55 Am. Rep. 340, it is said: "It is argued by counsel for plaintiffs in error that the several fire ordinances of Charleston are void, because there was no authority in the charter of the city to pass any such ordinances; that the real test of all ordinances passed by an incorporated body is the intention of the Legislature in granting the charter; that corporations cannot make ordinances contrary to their charters. If there is no authority in the charter of the city of Charleston to pass the said ordinances, of course according to the great weight of authority they are void." And cites many cases to sustain the foregoing, and then says: "Our court (West Virginia) has correctly settled the powers of municipal corporations in this state, as follows: 'A municipal corporation possesses and can exercise the following powers and no others: (1) Those granted in express words by its charter, or the general statutes under which it is incorporated; (2) those necessarily or fairly implied or incident to the powers thus expressly granted; and (3) those essential to the declared purposes of the corporation, not simply convenient, but indispensable." And the court cites the following cases and their decisions in support of the doctrine announced: "In Bradley vs Insurance Co. (11 Mich. 425), it was held that the common council of Detroit had power

to pass ordinances establishing fire limits and forbidding the
rebuilding or repair of wooden buildings within such limits.
The majority of the court by Martin, Chief Justice, said: 'Of
the power of the common council to pass the ordinances in
question we have no doubt. They contravene no provision
of the Constitution as we read it, and they were made in the
exercise of a police power necessary to the safety of the city.
A regulation of the use of property, or a prohibition of its
repair when partially destroyed, cannot to my mind be re-
garded as a condemnation to public use.' The charter allowed
the city to prevent the 'location or construction' of wooden
buildings, the 'removing' of such buildings, and the 'rebuilding
or repairing' of the same within the fire limits, which may be
adopted." "In Wadleigh vs Gilman it appeared that the
act incorporating the city of Bangor conferred authority on
the city 'to ordain and establish such acts, laws and regulations,
not inconsistent with the Constitution and laws of the state,
as shall be needful to the good order of such body politic.'
It was held that an ordinance of the city government prohibiting
the erection of wooden buildings in the city within certain limits
was within the authority conferred. Weston, C. J., in de-
livering the opinion of the court, said: 'The regulation in
question is for the general benefit. It adds to the value of
the property by lessening the hazard from fire, which operates
as a tax upon it, whether the owner is his own insurer or pro-
cures others to take the risk for a valuable consideration.
And economy as well as safety is really consulted by build-
ing with durable materials. Nor is there any danger that
the power to pass ordinances of this character will be wantonly
or unnecessarily exercised. The city authorities are annually
elected by the citizens from among themselves. No law of
theirs, not acceptable to the majority would be tolerated or
suffered to remain.' " "The charter of New Haven authorized
the city to make ordinances 'to protect said city from fire;

to organize, maintain and regulate a fire department and fire apparatus; to regulate the mode of building and the materials used for building, or altering buildings within the city or any part thereof; and the mode of using any buildings therein, and of heating the same, when such regulations seem expedient for the purpose of protecting said city from the dangers of fire,' etc. It was held that an ordinance passed under said charter 'establishing a fire district and forbidding the erection or placing of any wooden building within the district without license given by the board of aldermen, declaring such building should be deemed a common nuisance, and making it the duty of certain officers after reasonable notice to abate it,' was fully authorized by the charter and was reasonable. Hine vs City of New Haven, 40 Conn. 478." "The charter of the town of Greenville, Miss., gave the council power 'to provide for the prevention and extinguishment of fires, and to organize and establish fire companies,' etc.; and it was held that while the charter did not in express terms give the council power to establish 'fire limits,' and prohibit the erection of wooden buildings therein, yet such power is by the charter by fair implication conferred on the council. Alexander vs Town Council, 54 Miss. 659." And after these citations the court says: "In addition to the clause, 'to make regulations for guarding against danger or damages from fire,' we have the power 'to control the construction and repairs of all houses.' Now it seems to me that the provision of the charter of Charleston is the equivalent of conferring upon the council the power 'to from time to time establish "fire limits" and prevent the erection of wooden buildings therein.' These powers, it seems to me, if not expressly granted, are fairly implied from the language used in the charter, and are incident to the powers expressly granted, and are moreover essential to the declared purposes of the corporation, not simply convenient, but indispensable."

In our judgment, ample authority was given by section 752, Mansf. Dig., to adopt the ordinances. As heretofore stated, the only one of the ordinances applicable to repairs is ordinance No. 134, and if the building to be repaired was not a wooden building, then that ordinance was not applicable. If it was a wooden building with a damage of less than 25 per cent. of the value, then the plaintiff had a right to repair, and we are of the opinion that the damage was less than 25 per cent. under the proof. Therefore we are of the opinion the restraining order should have been granted, and the case is reversed, with directions to proceed in accordance with this opinion.

Reversed and remanded.

CLAYTON, J., concurs.  GILL, C. J., dissents.

GILL, C. J. (dissenting).  In this case the questions involved reduce themselves to one:  Shall this court reverse the court below refusing an injunction upon a question of fact where there is contradictory evidence?  The ordinance of the city of Vinita concerning repairs on buildings within the fire limits provides that where the repairs of a wooden building do not exceed 25 per cent. of its value, such repairs may be made, and the court below in refusing the injunction sought by appellant to restrain the officials of said city from interfering in making repairs found there were no equities in favor of appellant and refused the injunction prayed.  The testimony before the lower court was, on the one part, to the effect that the repairs necessary in consequence of damage by fire and water to the building in question exceeded 25 per cent. of its value, and on the other part, that such damage was less than 25 per cent.  It is true that all the evidence in the case before the trial court was in the shape of affidavits, and

that the affidavits are presented to this court in the record for its consideration on appeal. Possibly this court is in as good position to ascertain the facts as the court below, but where the lower court has passed upon facts, and the evidence is contradictory, and judgment may be found to be either of two or more ways under the evidence, and has refused to exercise its equitable jurisdiction, can this court review the matter, and compel the lower court to act against its judgment in the issuance of an injunction?' I think the great consensus of precedent authority is opposed to review under such circumstances. See array of authorities in 3 Am. Dig., tit. "Appeal and Error—Injunctions," §§ 3818-3821. It is a familiar rule of law that judgment of a lower court will not be disturbed by an Appellate Court where there are contradictions upon material points in the evidence, and this rule obtains in the decree of the chancellor in refusing injunctions in the absence of manifest abuse of his discretion.

In the case at bar, I do not agree with my Brethren in the reversal of this case. The court below had ample opportunity and was clothed with full authority to pass upon the facts. and its findings of the facts is conclusive upon this court. For this court to say that certain testimony shall be received and given credence, and for the court below not to have received it and given it credence was error, and that other testimony shall be refused and discredited and for the court below not to have refused and discredited it was error, savors of imperialism, and is contrary to precedent, and I, therefore, respectfully dissent from the opinion of the majority in this case, and am of opinion that the judgment of the lower court should be affirmed.